## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

NORMAN PETE                                    CIVIL ACTION

VERSUS                                         NO. 09-3403

ROBERT C. TANNER, WARDEN                       SECTION "N"(3)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1] For the following reasons, it is recommended that the instant petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### I.    *Procedural Background*

The petitioner, Norman Pete, is incarcerated at the Rayburn Correctional Center in Angie, Louisiana.[2] On March 4, 2004, Pete was charged by felony bill of information with three charges: two counts of forcible rape pursuant to La. Rev. Stat. 14:42.1, and one count of

---

[1]28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

second-degree kidnapping pursuant to La. Rev. Stat. 14:44.1.[3] On March 9, 2004, Pete pleaded

not guilty to all of the charges.[4]

On September 8, 2004, Pete filed a motion for speedy trial under La. Code Crim. Proc.

art. 701(A) in Orleans Parish Criminal District Court.[5]  On December 13, 2006, Pete renewed

this speedy trial motion and the state trial court ordered his release.[6]  However, Pete was

never in fact released from custody.

On January 11, 2008, Pete filed a motion to quash the indictment based on the State's

delay in bringing him to trial.[7]  Three days later, Pete filed a second motion to quash, relating

solely to the amendment of count three, the second-degree kidnapping charge.[8] The state trial

court denied both motions.[9]  On the same day, Pete pleaded guilty to all three counts.[10]  In

pleading guilty, Pete expressly reserved his right to seek appellate review of the trial court's

denial of his initial motion to quash, pursuant to *State v. Crosby*, 338 So. 2d 584 (La. 1976).[11]

---

[3]State Rec., Vol. 1 of 6, Bill of Information, 3/4/04.

[4]State Rec., Vol. 1 of 6, Minute Entry, 3/9/04.

[5]State Rec., Vol. 1 of 6, Minute Entry, 9/8/04; State Rec., Vol. 2 of 6, Motion for Speedy Trial, 9/8/04.

[6]State Rec., Vol. 1 of 6, Minute Entry, 12/13/06; State Rec., Vol. 2 of 6, Release Order, 12/13/06.

[7]State Rec., Vol. 1 of 6, Minute Entry, 1/11/08; Motion to Quash, 1/11/08.

[8]State Rec., Vol. 1 of 6, Motion to Quash 1/14/08.

[9]State Rec., Vol. 3 of 6, Transcript, 1/14/08.

[10]*Id.*; State Rec., Vol. 1 of 6, Minute Entry, 1/14/08; Guilty Plea Form 1/14/08.

[11]State Rec., Vol. 1 of 6, Minute Entry, 1/14/08; Guilty Plea Form 1/14/08; State Rec., Vol. 3 of 6, Transcript, 1/14/08.  Under *Crosby*, if a defendant enters a plea of guilty, an appellate court

Pete received three sentences of twenty years to run concurrently in exchange for his guilty pleas.[12]  The State filed an habitual offender bill of information, charging Pete as a second-felony offender pursuant to Louisiana's Habitual Offender Law.[13]  A hearing on the multiple bill was set and reset a number of times and eventually continued without a date on July 28, 2008.[14]

On February 17, 2009, Pete filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of mandamus requesting an opportunity to appeal, dismissal of the multiple bill of information, and transfer of records.[15]  The Fourth Circuit denied that application on May 8, 2009.[16]

During the pendency of that application, Pete filed an application for federal *habeas corpus* relief in this Court on April 14, 2009.[17]  This Court dismissed that petition without prejudice on August 11, 2009, finding that Pete had failed to exhaust his state court remedies prior to seeking federal *habeas corpus* relief.[18]

_____

may review "the assignments of error specifically reserved at the time of the plea of guilty, where the trial court accepted the plea of guilty so conditioned. . . ." *Crosby*, 338 So. 2d at 588.

[12]State Rec., Vol. 1 of 6, Guilty Plea Form; State Rec., Vol. 3 of 6, Transcript, 1/14/08.

[13]State Rec., Vol. 1 of 6, Minute Entry, 1/14/08; Multiple Bill.

[14]State Rec., Vol. 1 of 6, Minute Entry, 7/28/08.

[15]State Rec., Vol. 6 of 6, 4th Cir. Writ App., 2009-K-0308, 2/17/09.

[16]State Rec., Vol. 6 of 6, 4th Cir. Order, 2009-K-0308, 5/8/09.

[17]Rec. Doc. No. 1.

[18]Rec. Doc. No. 8.

After the dismissal of his federal petition, Pete eventually pleaded guilty to the multiple bill in the state trial court on January 20, 2011.[19]  He was resentenced as a second-felony offender on all three counts to concurrent terms of twenty years.[20]  Once again, Pete reserved his rights under *Crosby* to seek appellate review of the validity of the belated multiple bill proceedings.[21]

On March 20, 2013, the Louisiana Fourth Circuit affirmed Pete's convictions, and his habitual-offender sentence as to count one, but vacated the remaining habitual-offender sentences as errors patent and remanding for resentencing on those counts.[22]  On May 3, 2013, the state trial court resentenced Pete on counts two and three to terms of twenty years each.[23]

Prior to his resentencing, on April 12, 2013, Pete filed an application for post-conviction relief in the state trial court.[24]  In that application, he raised the following claims: (1) denial of a fair trial when the victim was present in court during the detective's preliminary examination; (2) trial counsel was constitutionally ineffective for failing to object to the victim's presence during the detective's testimony; (3) trial counsel conspired with the State

---

[19]State Rec., Vol. 1 of 1, Minute Entry, 1/10/11; Multiple Bill Guilty Plea Form, 1/10/11; State Rec., Vol. 5 of 6, Transcript, 1/10/11.

[20]*Id.*

[21]State Rec., Vol. 5 of 6, Transcript, 1/10/11.

[22]*State v. Pete*, 112 So. 3d 353 (La. App. 4 Cir. 2013); State Rec., Vol. 5 of 6, 4th Cir. Opinion, 2012-KA-0378, 3/20/13.  The Fourth Circuit found that the State had only filed a multiple bill as to the first count of forcible rape and therefore it was patent error for the trial court to resentence Pete as a second-felony offender on the second and third counts.

[23]State Rec., Vol. 1 of 6, Minute Entry, 5/3/13.

[24]State Rec., Vol. 1 of 6, 1st Post-Conviction Relief App., 4/12/13.

to maintain his custody despite the court ordering his release; (4) denial of effective assistance of counsel, "based on the law"; (5) denial of a fair probable cause hearing; (6) denial of "court-ordered liberty without due process of the law"; (7) denial of his right to a speedy trial; and (8) denial of "statutory and procedural rights, based on the law."[25]

On April 30, 2013, the state trial court denied relief on the post-conviction relief application, finding Pete's claims lacked merit.[26]  The Louisiana Fourth Circuit denied Pete's related writ application, finding no error in the state district court's judgment, on June 14, 2013.[27]  The Louisiana Supreme Court also denied the related writ application without stated reasons, on January 17, 2014.[28]

On January 20, 2014, Pete filed a motion in this Court to reopen the federal *habeas corpus* proceedings, asserting that he had now exhausted his state court remedies regarding

[25]*Id.*  As the State points out in its response, Pete did not support his application with a memorandum of law, and therefore some of the claims are vaguely stated and possibly intended to be subclaims.  It appears from the state district court judgment that the state district court construed some of them as subclaims.

[26]State Rec., Vol. 1 of 6, State Dist. Ct. Judgment, 4/30/13.

[27]State Rec., Vol. 6 of 6, 4th Cir. Order, 6/14/13.

[28]*State ex rel. Pete v. State*, 130 So. 3d 944 (La. 2014) (Mem); State Rec., Vol. 6 of 6, La. S. Ct. Order, 2013KH-1620, 1/17/14.  On May 9, 2013, Pete filed a second state post-conviction relief application in the state trial court.  State Rec., Vol. 1 of 6, 2nd Post-Conviction Relief App., 5/9/13.  In that application he raised one claim, arguing that he was denied assistance of counsel in his first post-conviction relief application.  On July 12, 2013, the trial court denied relief in a judgment stating that there is no right to counsel on collateral review.  State Rec., Vol. 1 of 6, State Dist. Ct. Judgment, 7/12/13.  It does not appear from the record that Pete sought further review of this ruling, and he did not assert this claim in his federal petition.

the claims.[29]  On May 14, 2014, this Court granted Pete's motion.[30]  In his petition, he raises

four claims: (1) he was denied a fair trial because the victim heard the detective's testimony;

(2) he received ineffective assistance of counsel; (3) he was ordered released from custody,

but he was not in fact released; and (4) he was denied his right to a speedy trial.[31]

In its response, the State conceded that the petition is timely, but argues that the claims

are not properly exhausted and thus are procedurally defaulted, and alternatively, lack merit.[32]

A district court may, in its discretion, deny relief on the merits regardless of whether or not

the claims have been fully exhausted. 28 U.S.C. § 2254(b)(2); *Jones v. Jones*, 163 F.3d 285, 299

(5th Cir. 1999).  Thus, this Court declines to address the State's arguments regarding

exhaustion, and turns to address the merits.

## II.    *Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively

overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections

2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure

questions of law, and mixed questions of both. The amendments "modified a federal habeas

court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible

under law." *Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

---

[29]Rec. Doc. No. 16.

[30]Rec. Doc. No. 22.

[31]Rec. Doc. No. 1.

[32]Rec. Doc. No. 27.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

7

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–87, 178 L.Ed.2d 624 (2011) (citations omitted; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

### III.   *Petitioner's Claims*

### 1.   **Denial of a fair trial because the victim heard the detective's testimony**

Pete's first claim is that he was denied a fair trial because the victim heard the detective's testimony at a preliminary hearing.  This claim must fail.  First, it is unclear that Pete has stated a cognizable constitutional claim for *habeas* relief.  He alleges that the victim's presence in the courtroom denied him a "fair trial," yet fails to describe how this alleged trial court error rose to the level of fundamental unfairness.  However, the Court needs not examine the claim further, because in any event Pete waived his right to raise such a claim when he pleaded guilty.  "It is well settled that when defendants plead guilty to state criminal charges,

they may not seek federal habeas corpus relief on the basis of constitutional claims antecedent to and independent of the guilty pleas." *Ellis v. Dyson*, 421 U.S. 426, 441 (1976) (citation omitted); *see also Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986) ("We also find that [petitioner] has waived this claim because a guilty plea intelligently, knowingly, and voluntarily made generally waives all claims relating to events preceding the guilty plea, including constitutional ones, in a subsequent habeas proceeding.").  Thus, even assuming *arguendo* that Pete could establish a constitutional violation regarding the victim's presence in the courtroom, he waived this claim through his plea of guilty.[33]

### 2.    Ineffective assistance of counsel

In Pete's next claim, he asserts that he received ineffective assistance of trial counsel. Specifically, he claims his trial counsel failed to object to the presence of the victim in the courtroom, and failed to perfect an appeal on his behalf.  He also asserts that when the trial court ordered his release from custody–but he was not in fact released–his trial counsel avoided his calls.

This claim must also fail.  Generally, in order to prevail on a claim of ineffective of counsel, a petitioner must prove that counsel's representation fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional

---

[33]While Pete did reserve his rights to review pretrial rulings under a *Crosby* plea, the record reflects that those claims were specifically: (1) the right to review the denial of his motion to quash, and (2) the right to review pretrial rulings regarding the multiple bill.  Those rulings are not at issue in his federal *habeas corpus* petition.

minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (*quoting Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Matthesson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. More specifically, in order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).

Ineffective assistance of counsel claims present a mixed question of law and fact; therefore, when the state courts have rejected such claims on the merits, a federal *habeas* court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

11

United States."  28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

Furthermore, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of such ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself. A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, ––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 785–86, 178 L.Ed.2d 624 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The

question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 788 (citations omitted; emphasis added).  In the instant case it is clear that petitioner has not made the showing required to overcome these stringently deferential standards of review. The state district court considered Pete's ineffective assistance of counsel claim in the state courts' last reasoned decision in its Judgment on post-conviction relief.[34]  It correctly applied the *Strickland* framework and found that Pete could not show deficient performance, specifically in relation to the victim's presence in the courtroom.  That decision was not an unreasonable application of, nor contrary to, federal law in this case where Pete pleaded guilty.

Nowhere in his federal petition does Pete allege that his attorney's actions affected his decision to voluntarily and intelligently enter into a guilty plea.  Thus, under *Hill v. Lockhart*, he has failed to show that there is a "reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59. He therefore cannot demonstrate the requisite prejudice required under *Strickland*.

Furthermore, the allegations he has lodged against his attorney simply do not amount to deficient performance.  First, as the state district court noted, and the record confirms,

---

[34]State Rec., Vol. 1 of 6, State Dist. Ct. Judgment, 4/30/13.

Pete's trial counsel was unaware of the victim's presence in the courtroom because the State failed to put the court and the defense on notice of the fact.  Immediately after trial counsel became aware of the victim's presence, he addressed the issue and requested a sequestration, which the state court reasonably deemed sufficient performance.

Second, Pete's assertion that trial counsel failed to perfect an appeal on his behalf is misguided because trial counsel no longer was enrolled as counsel after Pete was convicted. Both trial counsel's letter to the disciplinary board and the state record confirm this fact, which shows that the Louisiana Appellate Project was appointed to represent Pete on appeal and did indeed do so.

Finally, the unsupported allegation that Pete "called [his] hired attorney and his secretary and him avoided all calls and visits to his office by my family and me" after his release was ordered does not constitute a claim for *habeas* relief.  He asserts this claim without specificity, and it does not raise to the level of a constitutional violation.  However, as stated above, because at no point in his federal petition does Pete assert that he would not have pleaded guilty but for any of these errors, he is not entitled to *habeas corpus* relief on this claim, even if these errors could potentially constitute deficient performance.

### 3.   He was ordered released from custody and was not released

Pete asserts in his next claim that he was ordered released from custody, but never left the jail.  He does not explain this claim further in his federal petition, but in his initial application for post-conviction relief in the state district court he framed it as a violation of

14

"due process without the law."[35]  From the record, it appears that Pete was ordered released under La. Code Crim. P. art. 701,[36] owing to the State's failure to have brought him to trial within the period mandated by state law after his motion for a speedy trial.

However, Pete was not in fact ever released under that order.  It is not completely clear from the record why his release was not perfected.  The best indication is from a letter Pete himself wrote to the judge on or about June 4, 2007.[37]  The letter states, in relevant part:

> My name is Norman Pete, [ ] I have a case pending in your section.
> I understand you are a very well respected member of this community.
> However, Judge Johnson in December of 2006 you ordered my release on house arrest, to no avail.
> After getting in touch with my family members, I was told you withdrew that order based on my past criminal history.

Thus, apparently the state trial court judge withdrew the release order due to concerns about Pete's criminal history.

---

[35]State Rec., Vol. 1 of 6, 1st Post-Conviction Relief App., 4/12/13.

[36]Article 701 states, in relevant part:
D. (1) A motion by the defendant for a speedy trial, in order to be valid, must be accompanied by an affidavit by defendant's counsel certifying that the defendant and his counsel are prepared to proceed to trial within the delays set forth in this Article. After the filing of a motion for a speedy trial by the defendant and his counsel the time period for commencement of trial shall be as follows:
(a) The trial of a defendant charged with a felony shall commence within one hundred twenty days if he is continued in custody and within one hundred eighty days if he is not continued in custody.
(b) The trial of a defendant charged with a misdemeanor shall commence within thirty days if he is continued in custody and within sixty days if he is not continued in custody.
(2) Failure to commence trial within the time periods provided above shall result in the release of the defendant without bail or in the discharge of the bail obligation, if after contradictory hearing with the district attorney, just cause for the delay is not shown.
E. "Just cause" as used in this Article shall include any grounds beyond the control of the State or the Court.

[37]State Rec., Vol. 2 of 6, Letter to Judge, 6/4/07.

In any case, Pete's claim regarding the 701 release is not cognizable before this Court on federal *habeas corpus* review.  Because the claim relies on an article of Louisiana state procedural law, a violation of that article cannot establish a federal constitutional violation sufficient to warrant *habeas corpus* relief.  *See Swarthout v. Cooke*, ––– U.S. ––––, 131 S.Ct. 859, 861 (2011) (federal *habeas* review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (recognizing that federal *habeas* relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law).

Pete has not pointed to any Supreme Court precedent that clearly establishes a *habeas corpus* remedy for the improper continuation of a defendant's pretrial detention, and therefore has not stated a claim cognizable on *habeas corpus* review.  Thus, he is not entitled to relief on this claim.

### 4.     Denied his right to a speedy trial

Finally, Pete asserts that his right to a speedy trial was violated, despite having filed a motion for a speedy trial.  While a claim of a speedy trial violation can provide a cognizable basis for *habeas corpus* relief, Pete waived this claim when he entered his plea of guilty.

As explained in the analysis of Pete's first claim, by entering a voluntary, intelligent, and knowing plea of guilty, a criminal defendant waives "all claims relating to events preceding the guilty plea, including constitutional ones, in a subsequent habeas proceeding."  *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986).  Speedy trial claims are included in such a waiver. *Nelson v. Hargrett*, 989 F.2d 947, 850 (5th Cir. 1993) ("The district court held that [petitioner] waived his right to a speedy trial by pleading guilty.  This determination is clearly correct, for

a defendant waives all non-jurisdictional defects upon entering a guilty plea."); *see also United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992).

Thus, Pete cannot now seek *habeas corpus* review on the speedy trial issue before this Court.  He is not entitled to relief on this claim.

## <u>RECOMMENDATION</u>

For the foregoing reasons, **IT IS RECOMMENDED** that Petitioner's federal *habeas corpus* claims be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[1]

New Orleans, Louisiana, this  7th  day of   May  , 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.